IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PROFESSIONAL DOG BREEDERS        :
ADVISORY COUNCIL, INC.;
PENNSYLVANIA DOG BREEDERS
ASSOCIATION; CARL GILGORE;       :
NATHAN MYER; DANIEL ESH; and
BETTY STOLTZFUS
         Plaintiffs,               :

    v.                                               CIVIL ACTION
                      :        NO. 08-4233
DENNIS WOLFF, Secretary of
Pennsylvania Dept. of Agriculture, in
his official capacity; SUSAN WEST,       :
Director, Bureau of Dog Law Enforce-
ment, in her official capacity;
KRISTIN DONMOYER, in her official        :
and individual capacity; and,
DREW DELENICK, in his official and
individual capacity                      :
         Defendants.


**MEMORANDUM**

**Jones, J.**                                    **November 3, 2010**


    **I.**      **Introduction**


    The within matter involves allegations by two organizations (the Professional Dog

Breeders Association of Pennsylvania (hereinafter, "PDBA") and the Professional Dog Breeders

Advisory Council, Inc. (hereinafter "PDBAC")), as well as four individuals (Carl Gilgore,

Nathan Myer, Daniel Esh, and Betty Stoltzfus),[1] that Defendants[2] committed various

constitutional violations in their implementation of rules regarding dog kennels throughout the

Commonwealth of Pennsylvania, as well as with regard to enforcement of same within Lancaster

County, Pennsylvania.  Defendants have filed a Motion to Dismiss the First, Third, Fourth, Fifth,

Sixth, Seventh and Eighth Causes of Actions from Plaintiffs' First Amended Complaint.  For the

reasons set forth hereinbelow, said Motion will be granted in part and denied in part.

## II.    Factual Background

The Pennsylvania Department of Agriculture ("PDA") enforces 3 P.S. § 459-101 et seq.

(hereinafter "Dog Law") throughout the Commonwealth, which is divided into seven

enforcement regions.  (Am. Compl. ¶ 19.)  Those who wish to sell more than twenty-six (26)

dogs in a calendar year are required to have a license from the PDA.  (Am. Compl. ¶ 20.)

Breeders who raise dogs for wholesale must also be licensed by the United States Department of

Agriculture, which, unlike the PDA, maintains a Dealer Inspection Guide.  (Am. Compl. ¶¶ 23,

24.)  Plaintiffs allege that a lack of objective standards has led to discriminatory enforcement of

kennel regulations by wrongfully subjecting kennel operators to the individual discretion of the

BDLE inspectors.  (Am. Compl. ¶¶ 24-26.)

---

[1] This Court notes that Plaintiffs' Amended Complaint presents allegations by various individuals who are not named as Plaintiffs in the action: Ervin Zimmerman, David Zimmerman and Amos Stoltzfus. (Am. Compl. ¶¶ 45-54; 58, 67-68.)  Although Amos Stoltzfus is identified as a member of the Association, Ervin and David Zimmerman are not so identified.

[2] Defendants include: Dennis Wolff, Secretary of the Pennsylvania Department of Agriculture; Susan West, Director of the Bureau of Dog Law Enforcement (BDLE); Kristin Donmoyer, Kennel Compliance Specialist and member of the dog warden "SWAT Team;" and, Drew Delenick, Kennel Compliance Specialist.  (Am. Compl. ¶¶ 11-18.)  Ms. Donmoyer or Mr. Delenick are being sued in their individual capacities, as well as in their official capacities.

Plaintiff Gilgore attempted to videotape a kennel inspection that took place on November 2, 2007 at Zimmerman's Kennels, where he volunteers. (Am. Compl. ¶¶ 27, 28.) He alleges that Defendant Donmoyer threatened him with arrest, after which time he felt compelled to stop the video recorder. (Am. Compl. ¶¶ 29-31.) Defendants do not challenge Plaintiff Gilgore's First Amendment claim, except to the extent that he seeks declaratory judgment regarding same.

Plaintiff Myer alleges that he attempted to videotape an inspection conducted by Defendant Donmoyer at his kennel on June 28, 2007 but was threatened with arrest and therefore ceased videotaping. (Am. Compl. ¶ 32.)[3]

Plaintiff Esh claims that on December 20, 2007, Defendant Donmoyer inspected his kennel and found the amount of excreta to be unsatisfactory because said Defendant felt that it was not being removed daily and recorded it as such on the kennel inspection report. (Am. Compl. ¶¶ 40-44.) Plaintiff Esh alleges the Dog Law fails to state how clean a kennel must be to be satisfactory. (Am. Compl. ¶ 42.)

Plaintiff Betty Stoltzfus alleges that upon being targeted by animal rights activists, her husband, a dairy farmer, lost one of his milk customers and Plaintiff Stoltzfus was forced to

---

[3] This Court notes that Plaintiff Nathan Myer was also a plaintiff in another lawsuit instituted in the United States District Court for the Middle District of Pennsylvania, alleging the unconstitutionality of Pennsylvania's Dog Law, as well as other constitutional violations against Defendant Wolff. *See Professional Dog Breeders Advisory Council v. Wolff*, No. 1:CV-09-0258, 2009 U.S. Dist. LEXIS 83054 (M.D. Pa. Sept. 11, 2009). In this matter, Plaintiff Myer concedes that his First Amendment claims are time-barred, as he was first named as a party in the Amended Complaint, which was filed one day after the two-year statute of limitations had run. (Defs.' Mot. to Dismiss 19-20; Pls.' Resp. to Defs.' Mot. to Dismiss 36-37.) However, Plaintiffs assert that the allegations by Mr. Myer "[ ] are relevant to the policy and practice of the defendants." (Pls.' Resp. to Defs.' Mot. to Dismiss 36.) For the reasons set forth hereinbelow, this issue is moot with regard to the claims presently before this Court.

remove all dogs from her kennel. (Am. Compl. ¶ 70.) Defendant Delenick and Warden Maureen Siddons of BDLE stopped by the farm and inquired about the people who were housing Plaintiff Stoltzfus' dogs. (Am. Compl. ¶ 71.) When she refused to answer their questions, Defendant Delenick instructed Warden Siddons to issue a citation for interfering with a BDLE investigation. (Am. Compl. ¶ 72.) Plaintiff Stoltzfus was also cited for transferring puppies less than eight weeks old; Plaintiffs allege that Warden Siddons believed this was contrary to the intent of the law but issued a citation under the direction of Defendant Delenick. (Am. Compl. ¶ 74.) Mrs. Stoltzfus alleges she decided to close her kennel rather than face harassment and threats from BDLE and animal rights activists. (Am. Compl. ¶ 73.)

Plaintiffs further allege that policymakers at PDA directed BDLE agents to issue citations to Lancaster County kennels, regardless of the condition of the kennel and that during follow-up inspections, Defendants did not check to see if past violations had been remedied but rather found new violations for purposes of harassment. (Am. Compl. ¶¶ 47, 50.) In that same vein, Plaintiff PDBA alleges that the lack of objective standards for kennel inspection directly affects its members and that during the years 2006 through 2008, BDLE issued four citations and forty-two warnings to non-profit kennels in Pennsylvania while issuing seventy-six citations and three hundred and twenty-nine warnings to breeding kennels in Lancaster County. (Am. Compl. ¶¶ 39, 81.)[4] Plaintiffs allege that no non-profit kennel in Lancaster County has ever received a citation and one non-profit kennel in Region VI[5] has received a citation as of September 2008. (Am.

_____

[4] Details regarding the difference between warnings and citations are not alleged in Plaintiffs' complaint.

[5] Lancaster County sits in Region VI of the seven regions of Pennsylvania divided for purposes of enforcement.

Compl. ¶ 82.)  Plaintiffs' independent investigations of various other **non-profit kennels** show

them to be below the standard applied to breeding kennels.  (Am. Compl. ¶ 90)(emphasis added).

The BDLE reports citations to the General Assembly by county and the information is

posted online.  (Am. Compl. ¶¶ 83-84.)  Based upon this information, Plaintiffs allege that

Defendants targeted Lancaster County kennel owners and issued them ten times more citations

than any other county.  (Am. Compl. ¶ 85.)  In counties with more than 40,000 dogs, Defendants

issued seventy-six citations in Lancaster County and none in Allegheny, Bucks, and Montgomery

Counties during January 1, 2006 to May 31, 2008.  (Am. Compl. ¶ 87.)  By operating a kennel in

Lancaster County, Plaintiffs allege that a kennel owner is three times more likely to be inspected

and over one hundred times more likely to receive a warning.  (Am. Compl. ¶ 89.)  As such,

Plaintiffs claim there is no rational basis for such a disparity.  (Am. Compl. ¶ 89.)

Based upon the foregoing, Plaintiffs assert various constitutional violations pertaining to

free speech, Equal Protection and Due Process.

### III.  Discussion

#### a.  Standard of Proof

"In deciding motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts generally

consider only allegations in the complaint, exhibits attached to the complaint, matters of public

record, and documents that form the basis of the complaint."  *Brown v. Daniels*, 128 F. App'x

910, 913 (3d Cir. 2005)(quoting *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

To that end, Rule 12(d) of the Federal Rules of Civil Procedure provides:

> If, on a motion under Rule 12(b)(6) or 12( c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d).

A document forms the basis of a claim if it is integral to or is explicitly relied upon in the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The rationale in converting a motion to dismiss to one of summary judgment is to afford the plaintiff an opportunity to respond to the extraneous evidence submitted by the defendant and considered by the court. *See  Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied,* 510 U.S. 1042 (1994).  The primary problem of lack of notice to the plaintiff when the defendant attaches documents to their motion to dismiss dissipates when the plaintiff has actual notice of the attachments and the plaintiff has relied on the documents in forming the Complaint. *See  Burlington Coat Factory,* 114 F.3d at 1426 (internal citations omitted).

With regard to the instant matter, the issue of notice to Plaintiffs is not present  because Plaintiffs are responsible for attaching documents to their Response in Opposition to Defendants' Motion to Dismiss.  Although Plaintiffs do not explicitly reference PDBAC's Articles of Incorporation, said Articles do form the basis of Plaintiffs' procedural claim that PDBAC has standing to sue on behalf of its members in federal court.  (Am. Compl. ¶ 9; Pls.' Resp. to Defs.' Mot. to Dismiss 15-20.)  Thus, the Articles of Incorporation fall within the basis of the claim exception to Fed. R. Civ. P. Rule 12(d).  Moreover, the nine kennel inspection reports are available online and fall within the public record exception of Fed. R. Civ. P. 12(d), therefore they will be considered.  With regard to the declaration of PDBAC President, Robert G. Yarnall, Jr. regarding the PDBAC's mission and means of accomplishing same, said document was not an

exhibit attached to the Amended Complaint, is not a matter of public record, and does not form the basis of the Amended Complaint. Therefore, the document will be excluded from consideration in deciding Defendants' Motion to Dismiss and said Motion will not be converted to one for summary judgment.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)(internal quotation and citation omitted). As a result of the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. Specifically,

> Applying the principles of *Iqbal*, the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a Motion to Dismiss. First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." *Id.* at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. *Id.* (citing *Phillips*, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*Perano v. Twp. of Tilden*, 2010 U.S. Dist. LEXIS 36781, at **15-17 (E.D. Pa. Apr. 12, 2010).

For the reasons set forth hereinbelow, Plaintiffs' Amended Complaint is inadequate on several grounds.

### b.    Claims at Issue

### I.    Subject Matter Jurisdiction

For a United States District Court to hear a plaintiff's claims, the plaintiff must meet the "case or controversy" standing requirement under Article III, § 2 of the United States Constitution.  A plaintiff must show that "it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pa. Psychiatric Soc'y v. Green Spring Health Serv. Inc.*, 280 F.3d 278, 283 (3d Cir. 2002), *cert. denied,* 537 U.S. 881(2002).

In bringing the instant Motion to Dismiss, Defendants raise a facial challenge to PDBAC and PDBA's standing.[6]  In assessing a "facial" challenge, Plaintiffs are entitled to the presumption that their allegations are true.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  *See also Thompson v. Borough of Munhall*, 44 Fed. Appx. 582, 583 (3d Cir. 2002).  As such, the standard of review for Defendants' 12(b)(1) and 12(b)(6) arguments, will be the same:  "[the court shall] accept as true plaintiffs' material allegations, and

_____

[6] For ease of discussion and where appropriate, PDBAC and PDBA shall be referred to as "Associational Plaintiffs."

8

construe the complaint in the light most favorable to them." *Alston v. Countrywide Fin. Corp*., 585 F.3d 753, 758 (3d Cir. 2009).

The Third Circuit Court of Appeals has recently reiterated the proper standard for assessing matters based upon the premise of associational standing:

> An organization wishing to bring suit on behalf of its members must satisfy a specific combination of constitutional and prudential standing requirements. *See United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc*., 517 U.S. 544, 556-57, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) (explaining that the first two prongs of the associational standing test are constitutional, while the third prong is prudential). To establish that it has "associational standing" and can represent its members' interests in federal court, an organization must show that:
>
> > (a) its members would otherwise have standing to sue in their own right;
> > (b) the interests it seeks to protect are germane to the organization's purpose; and ( c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Lozano v. City of Hazleton*, 2010 U.S. App. LEXIS 18835, at *28 (3d Cir. Pa. Sept. 9, 2010)(quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)).

Importantly, "[t]he need for some individual participation [ ] does not necessarily bar associational standing under th[e] third criterion." *Pa. Psychiatric Soc'y*, 280 F.3d at 283. Moreover, individual participation is normally not necessary when an association does not seek monetary damages on behalf of its members. *Id.* at 284. Inasmuch as PDBAC and PDBA seek injunctive and declaratory relief for all their claims, standing cannot be denied on this basis.

With regard to the interests PDBAC and PDBA seek to protect, Defendants contend that said Plaintiffs are only pursuing claims on behalf of members who own kennels in Lancaster County, and no others. (Defs.' Mot. to Dismiss 6.) Relevant case law plainly states that an

organization can achieve associational standing by alleging that its members "or any one of them" are suffering an injury. *Pa. Psychiatric Soc'y*, 280 F.3d at 283. Moreover, there appears to be no dispute that the issues presented by Plaintiffs are germane to each organization's purpose.

Lastly, Defendants challenge PDBAC and PDBA's standing on the basis that pursuing the claims of its members would require the participation of individual members; particularly with regard to their Equal Protection claim. (Defs.' Mot. to Dismiss 6.) Inasmuch as it has been held that claims should not be dismissed at the pleadings stage "before [an association is] given an opportunity to establish alleged violations without significant individual participation," denial of standing is not warranted on this basis alone. *Id.* at 285. However, although this Court would find that PDBAC and PDBA do have standing to bring the instant claims, the issue is ultimately rendered moot for the reasons set forth hereinbelow.[7]

### ii.    Declaratory Judgment

The Declaratory Judgment Act gives the court the power to make a declaration regarding "'the rights and legal relations of any interested party seeking such declaration,' 28 U.S.C. 2201(a); it does not *require* the court exercise that power." *Step-Saver Data Sys. Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). "The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties." *Id.* The basic question is "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[7] This Court notes that PDBAC and PDBA are not parties to the First Amendment claim that has been alleged as the Second Cause of Action to Plaintiffs' Complaint, and to which Defendants do not object.

interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (quoting *Md. Cas. Co. v. Pac. Coal and Oil Co.*, 312 U.S. 270, 273 (1941)).

In deciding whether declaratory judgment is appropriate, the Third Circuit focuses on whether the controversy is ripe. *Id.* The court considers "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *Id.* Adversity of interest does not require a plaintiff to suffer a completed harm. *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992). In determining conclusiveness, the court considers whether a "decree issued by the district court would be sufficiently conclusive to define and clarify the legal rights or relations of the parties." *Step-Saver*, 912 F.2d at 648. *See also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1927)(finding declaratory judgment was proper even though the dispute was contingent upon determination of a factual dispute, i.e. whether the defendant policy holder had paid insurance premiums, in order to clarify the legal status of plaintiff insurance company). In determining utility, the court considers whether the parties' plan of action is likely to be affected by a declaratory judgment. *See Step-Saver,* 912 F.2d at 650. A purpose of the Declaratory Judgment Act is to clarify legal relationships so that plaintiffs and defendants can make responsible decisions about the future. *Id.* at 649. As such, declaratory judgment is improper solely for adjudicating past conduct. *See Corliss v. O'Brien*, 200 Fed. App'x 80 (3d Cir. 2006) (dismissing criminal pro se plaintiff's claim requesting the court to declare that his constitutional rights were violated).

Defendants herein move to dismiss Plaintiffs' first cause of action, which seeks declaratory judgment regarding Plaintiffs' First Amendment, Equal Protection, and Due Process

claims.  (Am. Compl. ¶¶ 99-101; Defs.' Mot. to Dismiss 14-16.)[8]   For the reasons extensively

set forth hereinbelow, Plaintiffs' declaratory judgment claim regarding all causes of action except

Plaintiff Gilgore's unopposed First Amendment claim, are rendered moot.  With regard to the

remaining First Amendment claim, Defendants' Motion to Dismiss Plaintiffs' declaratory

judgment claim pertaining to same is denied.  However, this Court declines to exercise its right to

render a declaratory judgment at this time based solely upon the averments set forth in Plaintiffs'

Amended Complaint, as adjudication of this issue is premature at this stage of the proceedings.

### iii.    Class-of-One Equal Protection Claim

Defendants next seek dismissal of Plaintiff Stoltzfus' and Associational Plaintiffs' Equal

Protection claims.  Specifically, Defendants move to dismiss Plaintiff Stoltzfus' claim for her

failure to allege that a similarly situated individual was treated differently.  (Defs.' Mot. to

Dismiss 17.)  Defendants move to dismiss Associational Plaintiffs' Equal Protection claim on

grounds that non-profit kennels are not similar to breeding kennels in Lancaster County.  (Defs.'

Mot. to Dismiss 8-9.)

When a plaintiff who alleges an Equal Protection claim does not aver membership in a

class or group, that plaintiff is considered to be a "class-of-one."  *See Vill. of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000).  In justifying the recognition of a class-of-one Equal Protection

cause of action, the Supreme Court notes that "the purpose of the Equal Protection clause of the

Fourteenth Amendment is to secure every person within the State's jurisdiction against

---

[8]  In their motion, Defendants incorrectly assert that only  "prospective defendants" can
seek declaratory judgment to establish their non-liability.  (Defs.' Mot. to Dismiss 15.)  In *Step-
Saver*, it was the plaintiff that was seeking declaratory judgment and that fact was not relevant in
the court's determination of whether declaratory judgment was proper.

intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* at 564 (quoting *Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445 (1923)). The Complaint must identify similarly situated individuals and allege that the plaintiff was treated differently. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). *See also Mann v. Brenner*, 375 Fed. App'x 232, 238-239 (3d Cir. 2010). Moreover, courts within the Third Circuit have required that a plaintiff plead specific instances of differential treatment to overcome a motion to dismiss. *See Conklin v. Warrington Twp.*, 304 Fed. App'x 115 (3d Cir. Pa. 2008)(litigant provided no specific instance(s) of defendant prothonotary handling any other litigant's documents differently or treating them differently otherwise); *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005)(disgruntled police officer failed to provide any specific instance(s) of other police officer employees being treated in a dissimilar manner). *See also Perano v. Tilden Twp.*, No. 09-00754, 2010 U.S. Dist. LEXIS 36781, at **31-32 (E.D Pa. Apr. 12, 2010)(plaintiff failed to adequately demonstrate how mobile home developers were similarly situated to high end real estate developers or commercial businesses in the region, to ultimately establish differential treatment).[9]

---

[9] It is further noted that although the Third Circuit case of *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) held that a plaintiff was not required to identify actual instances of different treatment by a similarly situated individual at the pleadings stage, the Second Circuit case on which *Phillips* relied (*DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)), has since been superceded by *Ruston v. Skaneateles Town Bd.*, 610 F.3d 55 (2d Cir. N.Y. 2010). In *Ruston*, the Second Circuit Court of Appeals held that a general allegation of differential treatment that was sufficient to state a claim for a class-of-one plaintiff in *DeMuria* was insufficient in light of *Iqbal*. *Id.* at 59.

Lastly, once a plaintiff has established specific instances of differential treatment towards similarly situated individuals or entities, said plaintiff must adequately allege that there was no rational basis for the treatment. *See Cradle of Liberty Council, Inc. v. City of Phila.*, 2008 U.S. Dist. LEXIS 74515 (E.D. Pa. Sept. 25, 2008).

This Court finds that the class-of-one claims brought by Betty Stoltzfus and Associational Plaintiffs' must be dismissed because neither has alleged a specific instance of differential treatment with a similarly situated individual/kennel or that there was no rational basis for same.

### (1)    A Plaintiff Must Allege That They Were Intentionally Treated Differently From Others Similarly Situated

This Circuit has determined that in order to sustain a valid class-of-one Equal Protection claim, a plaintiff must allege that s/he was "intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips,* 515 F.3d at 243. In that same vein, where a plaintiff does not allege the existence of a similarly situated individual who was treated differently than the plaintiff, a defendant's motion to dismiss the class-of-one Equal Protection claim will be granted. *See Hill,* 455 F.3d at 239 (granting motion to dismiss as a result of a plaintiff's failure to identify the existence of similarly situated Borough Managers whom the Mayor treated differently, i.e., more favorably, than he treated plaintiff). A mere allegation that the defendants violated the Equal Protection Clause will not suffice. *See Phillips* at 245. [10]  The same is true for Plaintiffs herein, particularly in light of the

---

[10] Although the *Phillips* court acknowledged the insufficiency of the class-of-one pleading, it concluded that the lower court should have granted the plaintiff leave to amend the Complaint. *Id.* at 245-246. Subsequent to the filing of Defendants' initial Motion to Dismiss in this case, Plaintiffs herein were granted leave to amend their original Complaint. As such, the Complaint at issue represents their second opportunity to cure any defects present in their first Complaint. Additionally, their Response to Defendants' current Motion to Dismiss is devoid of

pleading mandates set forth in *Twombly v. Bell Atlantic*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).

**(2)      A Plaintiff Must Allege Specific Instances of Differential Treatment of a Similarly Situated Individual**

Subsequent to *Phillips*, this District has further ruled that the relaxed standard of only having to generally plead that a plaintiff was treated differently than a similarly situated individual, does not enable said plaintiff to circumvent the basic requirements that "a formulaic recitation of a cause of action's elements" is not sufficient to survive a motion to dismiss.  *B. L. v. Boyertown Area Sch. Dist.*, No. 08-5194, 2009 U.S. Dist. LEXIS 56249, at *23 (E.D. Pa. July 1, 2009)(quoting *Twombly v. Bell Atlantic*, 550 U.S. 544, 555 (2007)).  This District has noted that reliance on the lenient pleading standard for the class-of-one Equal Protection plaintiff as stated in *Phillips* is misplaced in light of *Iqbal*, which requires that a Complaint contain more than "thread-bare recitals of the elements of a cause of action."  *Perano,* 2010 U.S. Dist. LEXIS 36781, at ** 15-16 (quoting *Iqbal*, 129 S.Ct. 1937, 1949 (2009)).[11] *See also Mann v. Brenner*,

---

any request for an opportunity to amend as an alternative form of relief, in the event this Court intends to grant Defendants' Motion.  Regardless, the submissions to date demonstrate that amendment would be futile.

[11]  In *Perano,* the plaintiff was a developer and owner of a mobile home park in Tilden Township, Pennsylvania. *Id.* at *6.  The District Court granted the defendant's motion to dismiss after finding that the plaintiff's Complaint did not sufficiently allege facts identifying similarly situated developers or provide specific instances to demonstrate differential treatment. *Id.* at **33-34.  Instead, the plaintiff compared the treatment he received as a developer of a residential mobile home park to high end real estate developers and commercial businesses, alleging that the Municipality had granted their licenses and permit applications but not his. *Id.* at *33.  In granting the defendant's motion to dismiss, the *Perano* Court relied on an interpretation from the Middle District which held that "when alleging the existence of similarly situated individuals, a plaintiff must allege 'occasions or circumstances' of differential treatment." *Id.* at **31-32 (quoting *Conklin v. Warrington Twp*., No. 1:06-CV-2245, 2008 U.S. Dist. LEXIS 53004 at **38-

375 Fed. App'x 232, 238-239 (3d Cir. Mar. 23, 2010)(noting that absent any allegation regarding other similarly situated individuals, the plaintiff's Complaint failed to rise to the level of being plausible rather than merely conceivable).

### (3) A Plaintiff Must Allege That There Was No Rational Basis for the Difference in Treatment

Where a plaintiff successfully alleges that s/he was "intentionally treated differently from others similarly situated," s/he must then sufficiently plead that there was no "rational relationship between the treatment and a legitimate government interest." *Good v. Trish*, No. 1:06-CV-1736, 2007 U.S. Dist. LEXIS 67764, at * 21 (M.D. Pa.. Sept. 13, 2007)(quoting *Montanye v. Wissahickon Sch. Dist.*, 399 F. Supp. 2d 615, 622 (E.D. Pa. 2005)).[12] When supporting facts are provided, an allegation that conduct by the defendants was "arbitrary and wholly irrational," can be sufficient to withstand a motion to dismiss. *Montanye* at 620. A Motion to Dismiss may similarly be denied where the defendant does not argue the existence of a legitimate government interest to explain the difference in treatment, one is not evident from the Complaint or other admissible documents, and the plaintiff has sufficiently alleged differential treatment with a similarly situated individual. *See Cradle of Liberty*, 2008 U.S. Dist. LEXIS 74515, at **21-22. In that same vein, the court may deny a Motion to Dismiss if selective enforcement against a plaintiff by the defendant lacks a rational relationship to a legitimate government objective. *Id.*, citing *Good*, 2007 U.S. Dist. LEXIS 67764, at *21.

---

39  (M.D. Pa. July 7, 2008), *aff'd* 304 Fed. App'x 115 (3d Cir. Pa. 2008)).

[12] The motion to dismiss at issue in *Good* was decided under the *Conley* pleading standard even though it was decided after *Twombly*. *See Good*,  2007 U.S. Dist. LEXIS 67764, at **21-22.

### (a)     Betty Stoltzfus' Equal Protection Claim

Defendants seek to dismiss  Plaintiff Stoltzfus' Equal Protection claim for failing to identify an actual instance of differential treatment, as compared to a similarly situated individual.[13]  (Defs.' Mot. to Dismiss 17.)  Unlike in  *Phillips*, where there was no claim of different treatment and only an allegation that the defendants had violated the Equal Protection Clause, Plaintiff Stoltzfus claims that she was treated differently when she was issued allegedly baseless citations by Warden Siddon at the order of Defendant Delenick.  (Am. Compl. ¶¶ 71, 72, 74; Pls.' Resp. to Defs.' Mot. to Dismiss 31-32.)  Although Plaintiff Stoltzfus identifies "breeding kennel operators" as "similarly situated" in her Response to Defendants' Motion to Dismiss, she failed to do so in her Amended Complaint.  (Pls.' Resp. to Defs.' Mot. to Dismiss 31, 33.)  Instead, Plaintiff Stoltzfus' Amended Complaint merely states that Defendants "intentionally treated her differently from others similarly situated to her."  (Am. Compl. ¶ 126.) Plaintiff Stoltzfus' class-of-one Equal Protection claim clearly fails to state a claim because she does not allege a specific instance of differential treatment.  *See Perano*, 2010 U.S. Dist. LEXIS 36781, at ** 31-32; *Conklin*, 2008 U.S. Dist. LEXIS 53004 at **38-39.  *See also Young,* 160 F. App'x at 266. Moreover, the facts alleged by Plaintiff Stoltzfus are not so obvious to conclude that Plaintiff Stoltzfus was the subject of differential treatment.  In sum, Plaintiff Stoltzfus has not alleged more than a "thread-bare recitation of the elements" needed to bring her claim.  *Iqbal v. Ashcroft*, 129 S.Ct. at 1949.

---

[13] Defendants' notion of a similarly situated individual to Plaintiff Stoltzfus would be a "kennel owner like herself has a husband owns a dairy farm whose biggest customer was no longer going to do business with the husband if she continued to operate the kennel and who closing her kennel and giving her dogs away and was not approached by Defendants and asked about what happened to the dogs."  (Defs.' Mot. to Dismiss 17.)

Defendants further seek to dismiss Plaintiff Stoltzfus' Equal Protection claim for failing to identify an actual instance of differential treatment compared to a similarly situated individual. (Defs.' Mot. to Dismiss 17.)

Unlike in *Phillips*, where there was no claim of different treatment and only an allegation that the defendants had violated the Equal Protection Clause, Plaintiff Stoltzfus claims that she was treated differently when she was issued allegedly baseless citations by Warden Siddon at the order of Defendant Delenick. (Am. Compl. ¶¶ 71, 72, 74; Pls.' Resp. to Defs.' Mot. to Dismiss 31-32.) Although Plaintiff Stoltzfus' Response to Defendants' Motion to Dismiss identifies "all other breeding kennel owners subject to regulation by the PDA, and to inspections by the BDLE," as well as "breeding kennel operators," as being similarly situated to herself, she failed to do so in her Amended Complaint. (Pls.' Resp. to Defs.' Mot. to Dismiss 31, 33.)[14,15] Instead, Plaintiff Stoltzfus' Amended Complaint merely states that Defendants "intentionally treated her differently from others similarly situated to her." (Am. Compl. ¶ 126.) Moreover, the facts alleged by Plaintiff Stoltzfus are not so obvious to conclude that Plaintiff Stoltzfus was the subject of differential treatment. Even under the more lenient pleading standards for a class-of-one Equal Protection plaintiff, Plaintiff Stoltzfus has not alleged more than a "thread-bare recitation of the elements" needed to bring her claim. *Iqbal v. Ashcroft*, 129 S.Ct. at 1949.

---

[14] This argument is contradictory, in that Plaintiffs' Amended Complaint is replete with allegations that these other kennel owners and operators receive preferential treatment from Defendants.

[15] In any event, the claim is insufficient. *See Young I*,160 F. App'x at 266 (finding that Plaintiff's "bald assertions" regarding unidentified but allegedly similarly situated, co-workers being treated in a dissimilar matter, did not provide the defendants with the notice required to frame a responsive pleading to his Equal Protection claim).

Accordingly, said claim fails. *See Perano*, 2010 U.S. Dist. LEXIS 36781, at ** 31-32 (holding that when a plaintiff alleges the existence of similarly situated individuals, they must further allege "occasions or circumstances" of differential treatment); *Conklin*, 2008 U.S. Dist. LEXIS 53004, at *38 (M.D. Pa. July 7, 2008)(finding that "mere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim.").

Lastly, a review of the allegations raised by both Betty Stoltzfus and the Associational Plaintiffs in their Amended Complaint contains nothing more than unsupported insinuations regarding the purported non-existence of a rational basis for the allegedly different treatment. Instead, Plaintiffs summary conclude in their allegations that Defendants have undertaken an injurious course of action to put Plaintiffs out of business. (Am. Compl. ¶ 149.)

Even if Betty Stoltzfus and Associational Plaintiffs could sufficiently show differential treatment, a rational basis for Defendants' conduct exists on the face of the Complaint. In *Cradle of Liberty Council, Inc. v. City of Phila.*, 2008 U.S. Dist. LEXIS 74515 (E.D. Pa. Sept. 25, 2008), after differential treatment had sufficiently been shown, the court asked whether the selective enforcement against the plaintiffs therein bore a rational relationship to a legitimate government interest. The court then looked to the defendant's Response, the plaintiff's Complaint, and other admissible documents. *Cradle of Liberty*, at **16-19. Here, the inspection disparity between breeding kennels in Lancaster County and non-profit kennels across the Commonwealth can be explained by the fact that among the eight counties used by Plaintiffs for comparison, Lancaster County houses the most dogs and also has the most kennels. (Am. Compl. ¶ 84.) Moreover, as

our sister court in the Middle District has comprehensively explained:

> The Commonwealth has established a rational basis for its enactment of the Pennsylvania Dog Law and the amendments provided by Act 119. Dog breeding is a lucrative business in Pennsylvania. According to Plaintiffs there are over 2,600 kennels in the Commonwealth, most of which earn their profit from the sale of puppies. (Doc. 15 at 12.) On average, a female dog in a kennel will be impregnated every seven to eight months, with at least fifteen-percent of all female dogs in a kennel birthing at one time. (*Id.*) The apparent goal is to ensure that "at all times female dogs . . . are either bred and carrying puppies or birthing puppies and prepared for being bred again." (*Id.* at 13.) Kennels try to "maintain a constant stream of puppies for sale, [meaning] female dogs must be continually bred and puppies born and sold." (*Id.*) Many of these female dogs are kept in kennels their entire lives and are never permitted outdoors. Puppies born from these dogs sell for between $ 250 to $ 550 if sold between eight and twelve weeks old. Puppies more than seventeen weeks old are deemed "worthless" by breeders. (*Id.*) Given the prevalence of dog kennels, and the enormous profit they tend to generate, the Commonwealth has provided a rational basis for ensuring some sort of regulation of the industry.

> Both parties agree that the purpose of the Dog Law and Act 119 is "to protect the health, safety and welfare of dogs." ***The state has a legitimate interest in protecting domestic animals, and the statute in question is rationally related to this objective.*** The Dog Law, as amended by Act 119, sets minimum standards that dog breeders and kennel owners must abide by. These standards relate to such things as dog licenses and tags, kennel conditions, the transportation of dogs, inspections of dogs and the premises in which they are kept, as well as various other tasks not in question here. The regulation of the dog breeding industry is nothing novel, the Pennsylvania Dog Law has been around for twenty-seven years without objection from Plaintiffs. Act 119 only minimally changes previous version of the Dog Law, and the Commonwealth has successfully established that these changes are rationally related.

*Prof'l Dog Breeders Advisory Council v. Wolff*, No. 1:CV-09-0258, 2009 U.S. Dist. LEXIS

83054, at **39-41 (M.D. Pa. Sept. 11, 2009)(emphasis added).

In view of the foregoing, Betty Stoltzfus' Equal Protection claim must be dismissed.

**(b)      PDBAC and PDBA's Equal Protection Claim on Behalf of Lancaster County Breeding Kennel Operators**

Associational Plaintiffs allege disproportionate and aggressive application of the Dog Laws against kennel operator-members in Lancaster County, in violation of the Equal Protection Clause.  (Am. Compl. ¶¶ 87-89, 114.)  Said Plaintiffs further allege that Defendants are selectively enforcing the law to harass or put Plaintiffs' members out of business.  (Am. Compl. ¶ 95.)  However, in their Response to Defendants' Motion to Dismiss, Associational Plaintiffs argue their Equal Protection claim under class-of-one jurisprudence.  (Pls.' Resp. to Defs.' Mot. to Dismiss 21.)

The focus of associational Plaintiffs' Equal Protection claim is for-profit breeding kennel owners in Lancaster County.  (Am. Compl. ¶¶ 81, 85, 89 114, 120, 121.)  Notably, Associational Plaintiffs' Equal Protection cause of action ties Defendants' conduct to the alleged injury sustained by "Lancaster County breeding kennels."  (Am. Compl. ¶¶ 120, 121.)  Defendants move to dismiss solely on the ground that non-profit kennels are not sufficiently similar to breeding kennels, which are the focus of Plaintiffs' Amended Complaint.  (Defs.' Mot. to Dismiss 8.)  Said Complaint alleges that BDLE targets Lancaster County breeding kennels and arbitrarily favors all other kennels not in Lancaster county, as well as non-profit kennels.  (Am. Compl. ¶ 1.)  Plaintiffs compare themselves to non-profit kennels[16] and kennels not in Lancaster

---

[16] Plaintiffs allege that they are similar to non-profit kennels because they were subject to the same Dog Law at the time this suit was filed in June 2009.  In Plaintiffs' Response, they note House Bill 2525, which treats non-profit kennels far differently than for-profit kennels.  *See also* 3 P.S. § 459-101 *et seq.*  Said provision was signed into law in October 7, 2008 and Plaintiffs note that it went into effect immediately.  (Pls.' Resp. to Defs.' Mot. to Dismiss 22, n.6.)  Newly-added kennel requirements 3 P.S. § 459-207(H)(1) through (16) went into effect one year after the Dog Law was amended; 3 P.S. § 459-207(H)(17)-(18), 207(I)(6)(X)(B) and (J) went into effect in sixty days, the remainder of the Dog Law went into effect immediately.

County with more than 40,000 dogs. (Am. Compl. ¶¶ 78-79, 81-82, 85-88, 90.) Additionally, Plaintiffs provide statistics to support their claim of differential treatment between kennels in Lancaster County and those in other counties, and allege that operating a kennel in Lancaster County makes them one hundred times more likely to receive a warning, three times more likely to be inspected, and more likely to be cited for a violation. (Am. Compl. ¶¶ 78-79, 81-85, 87-89.) Finally, Plaintiffs allege that their independent investigation of non-profit kennels revealed conditions that were purportedly far below those at breeding kennels. (Am. Compl. ¶¶ 90, 91.)

In Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs argue that for-profit and non-profit kennels are appropriate comparators because identical standards are applied to both. (Pls.' Resp. to Defs.' Mot. to Dismiss 22.) Plaintiffs also maintain that kennels not in Lancaster County are appropriate comparators to Lancaster County kennels because the only difference is location. (Pls.' Resp. to Defs.' Mot. to Dismiss 22.) Additionally, they contend that different treatment occurred and is evidenced by the fact that non-profit kennels in Pennsylvania were inspected 1356 times while for-profit kennels in Lancaster County were inspected 1666 times during the 2006-2008 inspection period. (Am. Compl. ¶ 81.) Further, Plaintiffs allege that there was no rational basis for the difference in treatment. (Am. Compl. ¶¶ 87-89.) In sum, Plaintiffs claim that Defendants are treating breeding kennel[17] owners in Lancaster County differently than kennels in other counties and non-profit kennels in all counties. (Am. Compl. ¶¶

---

[17] The Dog Law currently and at the time of Plaintiffs' Amended Complaint does not include a definition for "breeding kennels." Before the current version, the Dog Law defined "breeding kennel" as: "[a]ny kennel operated for the purpose of breeding, buying and selling or in any way transferring dogs for nonresearch purposes." 3 P.S. § 459-102 (1996), *amended by* 3 P.S. § 459-102 (2008). The relevant state administrative code at the time of Plaintiffs' Amended Complaint did not define "breeding kennels." *See* 7 Pa. Code § 21.1. The state administrative code incorporates the Dog Law by reference. *See* 7 Pa. Code § 21.2.

114, 116, 118, 120, 121.)

As just noted, Plaintiffs compare breeding kennel owners in Lancaster County to other breeding kennels throughout the Commonwealth, as well as to non-profit kennels in Lancaster County. (Am. Compl. ¶¶ 78, 81, 82.) However, Plaintiffs also compare Lancaster County breeding kennels to kennels not in Lancaster County without distinction between non-profit and for-profit kennels. (Am. Compl. ¶¶ 83-89; Pls.' Resp. to Defs.' Mot. to Dismiss 21- 22.) By making these comparisons, Plaintiffs attempt to isolate Lancaster County as the factor responsible for the difference in inspection, warning, and citation numbers between counties. In doing so, Plaintiffs are essentially contending that kennels within Lancaster County, regardless of their profit status, are unilaterally disfavored by Defendants. However, the facts relied upon by Plaintiffs do not support their allegation that their for-profit status contributes to the difference in number of inspections, warnings, and citations. Similarly, in making comparative references to non-profit kennels, Plaintiffs use facts derived not only from within Lancaster County, but from the entire Commonwealth. (Am. Compl. ¶¶ 78, 81, 82.) Therefore, Plaintiffs are simultaneously arguing that for-profit kennel owners are unilaterally disfavored by Defendants - regardless of whether their kennel is located in Lancaster County - while at the same time alleging that Lancaster County is the factor responsible for the numerical difference in Defendants' inspection, warning, and citation among counties with more than 40,000 dogs, including non-profit kennels within Lancaster County. (Am. Compl. ¶¶ 81, 82 .)

The Dog Law in effect at the time of Plaintiffs' Amended Complaint lists sixteen different types of kennels. *See* 3 P.S. § 459-206. Private and commercial kennels are each separated into six subcategories determined by the number of dogs sold; boarding kennels are

separated into three subcategories determined by the number of dogs able to be accommodated;

and non-profit kennels constitute their own category.[18]  3 P.S. § 459-206(a).  In Plaintiffs'

Response in Opposition to Defendants' Motion to Dismiss, they argue that the comparison to

---

[18] A *private kennel* is defined as: "A kennel not meeting the definition of 'commercial kennel' where dogs are kept or bred by their owner, for the purpose of hunting, tracking, or exhibiting at dog shows, performance events, or field and obedience trials."  3 P.S. § 459-102.

A *commercial kennel* is defined as: "A kennel that breeds or whelps dogs and: (1) sells or transfers any dog to a dealer, pet shop kennel; or (2) sells or transfers more than 60 dogs per calendar year."  *Id.*

A *boarding kennel* is defined as:

> Any establishment available to the general public where a dog or dogs are housed for compensation by the day, week or a specified or unspecified time.  The term shall not include a kennel where the practice of veterinary medicine is performed if the kennel is covered by the provisions of the act of December 27, 1974 (P.L. 995, No. 326), known as the "Veterinary Medicine Practice Act."  The term shall include any boarding facility operated by a licensed doctor of veterinary medicine whether or not this facility is on the same premises as a building or structure subject to the provisions of the "Veterinary Medicine Practice Act."  The term shall include any establishment available to the general public that, for consideration, takes control of a dog from the owner for a portion of a day for the purposes of exercise, day care or entertainment of the dog.  For the purpose of this term, each time a dog enters the kennel it shall be counted as one dog.  This term does not include an establishment engaged only in dog grooming or dog training.

*Id.*

A *non-profit kennel* is defined as:

> A kennel registered under the laws of this Commonwealth as a nonprofit entity or a nonprofit animal control kennel under sections 901 and 1002.  The term shall include kennels operated by approved medical and veterinary schools and nonprofit institutions conducting medical and scientific research, which shall be required to register, but shall not be required to pay any of the license fees set by this act, and which may use their own identification tags for dogs within their kennels without being required to attach tags hereinafter prescribed while dogs are within such kennels, if approved by the secretary.

*Id.*

non-profit kennels is appropriate because non-profit kennels are subject to the same standards as for-profit kennels.  (Pls.' Resp. to Defs.' Mot. to Dismiss 22.)  However, at the time of Plaintiffs' Amended Complaint, non-profit kennels, boarding kennels, and kennel classes I through VI had requirements that were different from commercial kennel classes I through VI.  3 P.S. § 459-207(g).[19]  Therefore, although the Dog Law is applied throughout the Commonwealth, it does distinguish between various types of kennels.  Accordingly, all kennels ***are not*** the same and despite Plaintiffs' apparent argument that they ***should be*** the same, classification is a legislative function and not one of this Court.

Plaintiffs' Amended Complaint is replete with conclusory allegations regarding purported similarities between breeding kennels in Lancaster County and non-profit kennels or kennels in counties with more than 40,000 dogs.  In *Mann v. Brenner*, 375 Fed. App'x 232, 238-239 (3d Cir. Mar. 23, 2010), the owner of a concededly "blighted" property, "[ ] accused the defendants of manipulating building codes and ordinance violations to bring improper charges against him, intentionally damaging his property, and lodging other unspecified false criminal charges against him," all in an effort to force him to sell his property.  *Id.* at 234. In assessing the plaintiff's Equal Protection claim, the court in *Mann* deemed his Complaint deficient, because it lacked any comparisons of Plaintiff to other property owners of blighted structures in the City of York.  *Id.* at 238-39.  By analogy, Plaintiffs' use of the statewide application of the Dog Law as a basis for choosing their comparators, is no different than Mr. Mann comparing himself to "other property owners" and not "other property owners of blighted structures."  Additionally, although both

---

[19]  For instance, non-profit kennels are held to a different standard with regard to record keeping and are also not required to use county-issued tags.  *See* 3 P.S. §§ 459-203, 459-206(b), 459-207(c.1).

non-profit kennels and kennels in counties with over 40,000 dogs may seek the approval of

Defendants for inspections and licenses in the same way breeding kennels in Lancaster County

also seek the approval of Defendants, this is insufficient as a basis for similarity. *See Perano,*

2010 U.S. Dist. LEXIS 36781, at \*33 (mobile home developers were deemed not similarly

situated to high end real estate developers or commercial businesses merely because they sought

the same or similar type of permit approval and licensing from the defendant). Accordingly, the

mere fact that all kennel groups are subject to the approval of Defendants in some fashion i.e.,

kennel licenses, kennel license renewals, kennel inspections etc., does not alter this conclusion.

In addition to the lack of similarity between Associational Plaintiffs and their

comparators, said Plaintiffs do not allege a specific instance of differential treatment. Instead,

they attempt to allege differential treatment by showing differences in the number of inspections,

warnings, and citations of various counties and non-profit kennels compared to breeding kennels

in Lancaster County. (Am. Compl. ¶¶ 81, 82, 84-89.) As in *Conklin*, Plaintiffs go into detail

about the treatment that some of their Lancaster County members received by Defendants but fail

to allege a specific situation where the Defendants treated a similarly situated breeder

differently/favorably. (Am. Compl. ¶¶ 47, 50, 53, 66.) Like *Hill*, Plaintiffs allege facts about the

disfavored treatment they received but fail to allege any facts about dog breeders who had the

same kennel conditions and were treated favorably.

In a civil rights matter involving an Equal Protection claim by a police officer who had

been terminated from employment, Plaintiff alleged that "no similarly situated police officers

were treated in the same manner." *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d

Cir. 2005) (referred to as "*Young I*"). In affirming dismissal of said claim, the Third Circuit

reiterated that Plaintiff inadequately identified a specific occasion of differential treatment, but

provided him with an opportunity to amend his Complaint. *Id.* In the Amended Complaint,

Plaintiff sufficiently stated a claim for Equal Protection by alleging that "other officers were not

suspended without proper investigation; other officers were not subject to false charges of

criminal charges [sic], other officers were not prevented and/or harassed for exercising their right

to file charges against persons violating the law." *Young v. New Sewickley Twp*., 2006 U.S. Dist.

LEXIS 81723 (W.D. Pa., Nov. 8, 2006)(referred to as *Young II*). Finding that these averments

were *just barely* sufficient to state an Equal Protection claim, the court denied the defendant's

Motion to Dismiss the plaintiff's Equal Protection claim. *Id.* at *2.

This Court notes that the *Young I* decision was rendered under the more liberal, pre-

*Twombly* pleading standard. However, current pleading requirements mandate a class-of-one

plaintiff to allege facts referencing specific occasions or circumstances of differential treatment.

In the case at bar, Associational Plaintiffs' allegations of harassment and improper enforcement

of the Dog Law by Defendants as contained in their **Amended** Complaint mirror the allegations

discussed in *Young I* and therefore fail to sufficiently describe the allegedly differential

treatment.

Plaintiffs Amended Complaint contains no specific instances of for-profit kennels in

other counties within the Commonwealth that have operated under sub-standard conditions, were

inspected by the same inspectors, and did not receive warnings or citations.[20]

---

[20] As previously noted, Associational Plaintiffs allege that they conducted "[i]ndependent
investigations of various non-profit kennels," and found conditions therein to be "far below the
standards applied to breeding kennels." (Am. Compl. ¶ 90.) However, Plaintiffs fail to allege
the location of the non-profit kennels, or that Defendants Donmoyer and Delenick inspected
these non-profit kennels, found violations of the law, and failed to issue warnings or citations.

Additionally, the disparity between non-profit kennels throughout the Commonwealth and breeding kennels in Lancaster County - as relied upon by Plaintiffs - is *de minimus*. Plaintiffs allege that in 2008, the Commonwealth was home to two hundred and eighty-five (285) non-profit kennels. (Am. Compl. ¶ 78.) These non-profit kennels were inspected 1356 times by Defendants. (Am. Compl. ¶ 81.) Plaintiffs allege that there are three hundred and two (302) for-profit kennels in Lancaster County which were inspected 1666 times. (Am. Compl. ¶ 84.) Based upon a plain reading of Plaintiffs' Amended Complaint, these averments fail to adequately demonstrate any significant inspection disparity between non-profit kennels as compared to for-profit kennels in Lancaster County. More importantly though, numbers alone cannot satisfy Plaintiffs' pleading burden.

Finally, for the reasons previously set forth regarding Betty Stoltzfus' Equal Protection claim, Association Plaintiffs have similarly failed to sufficiently plead that there was no rational basis for any purported differential treatment by Defendants.

In view of the foregoing, this Court finds that Betty Stotzfus, PDBAC and PDBA have failed to adequately plead a class-of-one Equal Protection claim.

### iv.    Selective Enforcement

A facially valid law may still be unconstitutional and violate the Equal Protection Clause if it is enforced in a discriminatory manner. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d. Cir. 2005) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886)). To establish selective enforcement, it must be shown that: "(1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intent to discriminate

_____

Accordingly, Plaintiffs cannot rely upon these allegations for purposes of comparison.

on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure a person." *Brobson v. Borough of New Hope,* No. CIV. A. 00-0003, 2000 U.S. Dist. LEXIS 16976, at **13-14 (E.D. Pa. Nov. 22, 2000)(citing *Homan v. City of Reading*, 15 F.Supp.2d 696, 702 (E.D. Pa. 1998)).  To satisfy the first prong, the plaintiff must name someone who was similarly situated but treated differently.  *Id.*  To satisfy the second prong, the plaintiff who is not alleging membership in a suspect class nor asserting that the defendants' conduct was to punish the plaintiff for exercising a constitutional right, must assert a reason behind the alleged selective treatment.  *See Brobson*, 2000 U.S. Dist. LEXIS 16976, at **15-16.  Merely alleging that the defendant acted "maliciously" does not satisfy the second prong.  *Id.*

> **a.**    **PDBAC and PDBA Fail to State a Claim for Selective Enforcement in Violation of Equal Protection Because They Fail to Allege Facts of a Similarly Situated Group**

Associational Plaintiffs fail to state a claim for Equal Protection under the selective enforcement theory because they do not name a similarly situated party who was treated differently to satisfy the first prong.  Plaintiffs allege they are similarly situated to non-profit kennels and kennels located outside of Lancaster County that have over 40,000 dogs because they are subject to the same standards as breeding kennels in Lancaster County.  (Am. Compl. ¶¶ 81, 84-89, 114; Pls.' Resp. to Defs.' Mot. to Dismiss 22.)   However, for the reasons previously set forth hereinabove, Plaintiffs have failed to properly allege facts of a similarly situated group.

### b. Plaintiffs Fail to Allege a Reason Behind the Alleged Selective Enforcement

In addition to the foregoing, Plaintiffs do not successfully allege that Defendants' course of action is in retaliation for or to punish the exercise of a constitutional right.[21]  In the instant action, Plaintiffs allege that Defendants undertook their course of action "because of its adverse consequence upon plaintiffs as Lancaster County breeding kennel owners."  (Am. Compl. ¶ 120.) This allegation references the result of Defendants' actions but does not state the Defendants' motivation in pursuing those actions.  *See Brobson,* 2000 U.S. Dist. LEXIS 16976, at **15-16. (plaintiff failed to allege membership in a suspect class, did not assert that the defendants' conduct was punishment for the exercise of a constitutional right, and did not offer a reason for the defendants' alleged selective treatment).  As such, Plaintiffs fail to state a claim on the basis selective enforcement.

### v. Procedural Due Process

Defendants next seek dismissal of Plaintiffs' procedural Due Process claim, which this Court notes is largely identical to a claim previously raised by the PDBAC and adjudicated in the United States District Court in the Middle District of Pennsylvania. *See Prof'l Dog Breeders Advisory Council v. Wolff*, Civil No. 1:CV-09-0258, 2009 U.S. Dist. LEXIS 90346  (M.D. Pa. Sept. 11, 2009).  However, reaching the merits of the instant claim, this Court finds that Plaintiffs lack injury to bring said claims before this Court.

In Pennsylvania, revocation or denial of a license does not become final unless the kennel owner does not seek an administrative hearing within ten (10) days of the Secretary's written

---

[21] Instead, Plaintiffs insufficiently alleged that Defendants violated their Due Process liberty interest.

notice to the kennel owner stating the factual and legal basis for the revocation or denial. *See* 3 P.S. §459-211 (b)(2). A valid procedural Due Process claim "[m]ust allege a state sponsored deprivation of a protected interest in life, liberty, or property." *Prof'l Dog Breeders,* 2009 U.S. Dist. LEXIS 90346, at *45, (quoting *Rusnak v. Williams*, 44 F. App'x. 555, 558 (3d Cir. 2002)).

In the case Plaintiff PDBAC brought before the United States District Court for the Middle District of Pennsylvania, said Plaintiff argued that "[ ] the administrative process after a cease and desist order is issued violates procedural due process." *Id.* There, the court reasoned that even if PDBAC "[could] establish a protected property interest in a license refusal or revocation, their Due Process claim still fails because the Dog Law affords them notice and an opportunity to be heard." *Id*.

In the matter now before this Court, Plaintiffs PDBAC, PDBA, Myer, Esh, and Stoltzfus have failed to sufficiently allege a liberty interest in engaging in the occupation of dog breeding. (Am. Compl. ¶¶ 12, 148.) Even if Plaintiffs could allege a protected liberty interest in dog breeding, their procedural Due Process claim would fail because the Dog Law statutorily mandates notice and an opportunity to be heard before the revocation or denial of a license becomes final. *See* 3 P.S. § 459-211( c). Plaintiffs allege denial of procedural Due Process because a kennel owner is unable to challenge unsatisfactory notations received during kennel inspection which may later be used to deny or revoke a kennel license. (Am. Compl. ¶135.)[22]

---

[22] This Court notes that in their Amended Complaint, Plaintiffs aver that breeder David Zimmerman was cited by a BDLE agent for kennel violations <u>and that after a hearing, said citations were dismissed</u>. (Am. Compl. ¶¶ 51-54.)

License revocation or denial does not become final until after notice is given to the kennel owner:

> (b) NOTICE OF ACTION.--
>
>> (1) The secretary shall provide written notice of a kennel license, dealer license or an out-of-state dealer license revocation, suspension or refusal to the person whose license is revoked, suspended or refused. The notice shall set forth the general factual and legal basis for the action and shall advise the affected person that within ten days of receipt of the notice he may file with the secretary a written request for an administrative hearing. The hearing shall be conducted in accordance with 2 Pa.C.S. (relating to administrative law and procedure).

3 P.S. §459-211(b)(1).

An unsatisfactory notation alone does not automatically result in the revocation or denial of a kennel license; the Dog Law lists factors that the secretary may consider in denying or revoking a license. *See* 3 P.S. § 459-211(a)(A.1). Although the Secretary must revoke the license of any kennel owner that is convicted of a crime relating to cruelty of animals, there is no provision in the Dog Law that states that the secretary must revoke or refuse a kennel license to someone who has received anything short of a spotless kennel inspection. *See* 3 P.S. § 459-211(a). The revocation or denial of a kennel operator's license becomes final ten days after notice and only if the dog breeder does not request an administrative hearing. *See* 3 P.S. § 459-211(b)(2).

Plaintiffs fail to state a procedural Due Process claim because they do not sufficiently allege a protected liberty interest. Moreover, even if Plaintiffs had sufficiently alleged a protected liberty interest, the Dog Law affords Plaintiffs adequate procedure.

### vi. Due Process Violations Based Upon Unknown Standards

Plaintiffs further contend that their Due Process rights have been violated because they were subjected to standards known only inspectors. (Pls.' Resp. to Defs.' Mot. to Dismiss 34.) In support of same, they cite to *City of Chi v. Morales,* 527 U.S. 41 (1999), for the proposition that "[ ] a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Id.* at 56.

When raising an issue of statutory vagueness, a plaintiff must show that "men of common intelligence must necessarily guess at its meaning." *Borden v. School Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 166-167 (3d Cir. 2008) (internal quotations omitted). A statute is deemed vague if: "(1) it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; or (2) it fails to provide explicit standards to the enforcing officer [ ]." *Trojan Tech. Inc. v. Commonwealth of Pa.*, 916 F.2d 903, 914 (3d Cir. 1990). Whether a statute is vague is determined on a "case-by-case basis and the party opposing the statute or standard must show that it is vague as applied to him." *Borden*, 523 F.3d at 167 (quoting *San Filippo v. Bongiovanni*, 961 F.2d at 1125, 1136 (3d Cir. 1992)). Additionally, when the statute being challenged does not involve First Amendment rights, it must be examined in light of the facts and cannot be challenged for vagueness by a person to whom the statute clearly applies. *See Todd & Co. Inc. v. S.E.C.*, 557 F.2d 1008, 1013 (3d Cir. 1977) (rejecting the argument that National Association of Securities Dealers' rule was vague as applied to the plaintiff because it gave sufficient warning to avoid the prohibited conduct and the conduct would reasonably be expected to violate the rules by those subject to them).

In the matter before this Court, Plaintiffs seek to challenge the absence of inspection standards by alleging that there are no standards for kennel operators to follow, while concurrently alleging arbitrary enforcement of the Dog Law. (Am. Compl. ¶¶ 2, 24-26, 42, 46, 53, 68.) In their Response to Defendants' Motion to Dismiss, Plaintiffs attempt to clarify their Due Process claim by stating that the "shifting standard known only to inspectors" resulted in arbitrary enforcement of the Dog Laws. (Pls.' Resp. to Defs.' Mot. to Dismiss 34.)

Associational Plaintiffs allege that Defendants failed to create and enforce objective standards for kennel compliance and failed to train their agents and employees with objective standards for kennel compliance leading to discriminatory enforcement of kennel regulations. (Am. Compl. ¶¶ 25-26.) Said Plaintiffs note the absence of a dealer manual or inspection guide, which they claim leaves kennel enforcement to the unbridled discretion of BDLE agents. (Am. Compl. ¶ 24.) Additionally, Plaintiffs contend that there is no objective standard for kennel operators to follow regarding inspections. (Am. Compl. ¶ 2, 24 - 26, 39, 42, 57.) As one example, Plaintiffs allege that there is no regulation for kennel operators to follow that instructs them on how clean an area must be to receive a satisfactory notation. (Am. Compl. ¶ 42.) Further, Plaintiffs allege that kennels are inspected using the subjective standards of Defendant Donmoyer because objective standards do not exist. (Am. Compl. ¶¶ 40, 43, 44, 57.) In response to these claims, Defendants argue that 7 Pa. Code §§ 21.1 - 21.42 provides a comprehensive list of kennel requirements. (Defs.' Mot. to Dismiss 18.)

Beyond alleging that standards for kennel inspections do not exist, Plaintiffs fail to allege how the current regulations are insufficient to put kennel operators on notice of prohibited conduct. In fact, their Complaint clearly demonstrates that they are aware of the type of conduct

34

that is prohibited, as they personally investigated non-profit kennels and made notations of alleged inadequacies. (Am. Compl. ¶¶ 90-91.) Plaintiffs measure non-profit kennels by a standard unknown to this Court but do not allege how the Dog Law fails to put breeders on notice of prohibited conduct.

The only specific mention of the Dog Law with regard to its purported vagueness, is made in regards to the allowable amount of excreta to pass inspection. (Am. Compl. ¶¶ 42, 43.) Even then, Plaintiffs do not allege how the Dog Law is insufficient to put a breeder on notice. Plaintiffs claim that there is no way to know when Defendant Donmoyer will feel there is an excess of excreta to constitute a violation. (Am. Compl. ¶ 44.) They also allege that there is no regulation that a person could follow that specifies the level of cleanliness required to achieve a satisfactory grade by the BDLE. (Am. Compl. ¶ 42.) However, the statute reads in relevant part as follows:

> Excreta, feces, hair, dirt, debris and food waste must be removed from primary enclosures at least daily or more often if necessary to prevent an accumulation of excreta, feces, hair, dirt, debris and food waste to prevent soiling of dogs contained in the primary enclosures and to reduce disease hazards, insects, pests and odors.

3 P.S. § 459-207(h)(14)(I).

The prohibited conduct is the accumulation of excreta; the fact that the Dog Law does not *quantify* the amount does not constitute a failure to notify Plaintiffs of the prohibited conduct.

Moreover, Plaintiffs cite to various portions of the Dog Law, which demonstrates that they are aware of the existence of statutes governing kennel maintenance/operations. (Am. Compl. ¶¶ 1, 56, 60-61.) This runs contrary to their assertion that they do not have sufficient notice of prohibited conduct. To the extent Plaintiffs seek to challenge the standards applicable

to the enforcing officer, they have not alleged sufficient facts to state this claim beyond the blanket assertion that "Defendants have failed to train their agents and employees on objective standards for kennel compliance." (Am. Compl. ¶ 26.) Further, the Dog Law governs training for inspection personnel. *See* 3 P.S. § 459-901(b). In their Response to the instant Motion, Plaintiffs provide no discussion regarding how this training is inadequate. Accordingly, Plaintiffs' sixth cause of action must be dismissed.

### vii. Arbitrary Enforcement

Regarding arbitrary enforcement, Due Process limits what the government may do in its legislative and executive capacities and what is considered fatally arbitrary depends on whether legislation or a specific act of a government officer is at issue. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Only the most egregious official conduct is said to be arbitrary in the constitutional sense." *Id., quoting Collins v. Harker Heights*, 503 U.S. 115, 129 (1992). Official conduct is arbitrary when it rises to a level that would "shock the conscience." *Id.*

In their seventh cause of action, Plaintiffs PDBAC, PDBA, Myer, Esh and Stoltzfus complain of Due Process violations based upon Defendants' alleged policy of refusing to issue objective standards for kennel operators, resulting in the kennel operators' inability to comply with regulations. (Am. Compl. ¶¶ 140-145.) Plaintiffs further contend that Defendants' reinspection of an entire kennel - rather than limiting subsequent inspections to previous violations - makes compliance impossible. (Am. Compl. ¶¶142, 145.) To the extent Plaintiffs' seventh cause of action replicates the sixth regarding vagueness, it must be dismissed.

However, to the extent Plaintiffs' seventh cause of action may be construed solely as an assertion that Defendants' actions result in arbitrary enforcement of the Dog Laws, said claim must include sufficient facts to show an executive act that is so arbitrary, it would shock the conscience.

Plaintiffs allege two courses of conduct that may be evaluated under this Due Process claim. First, Plaintiffs allege that the reinspection is a pretext for finding new violations instead of checking to see whether old violations have been remedied. (Am. Compl. ¶ 142; Pls.' Resp. to Defs.' Mot. to Dismiss 24-25.) Plaintiffs further claim that upon reinspection, Defendants found more violations and recorded "unsatisfactory notations and issued additional citations." (Am. Compl. ¶¶ 53, 59-61, 64.) These facts show that reinspection occurred, violations were found, and citations were issued.[23]

The second course of conduct that Plaintiffs challenge is the failure of Defendants to issue standards. For the reasons set forth hereinabove regarding sufficient notice of prohibited conduct, this allegation merits no further discussion.

Regarding an intent to injure, Plaintiffs allege that Defendants engaged in harassment. (Am. Compl. ¶¶ 50, 73.) However, this Court finds that the conduct complained of in their Complaint does not rise to a level that would "shock" one's conscience. *See County of Sacramento,* 523 U.S. at 846.

Accordingly, Plaintiffs' seventh cause of action alleging arbitrary enforcement in violation of due process must be dismissed.

---

[23] The Dog Law mandates that each for-profit kennel is inspected at least twice per year. The fact that a kennel was reinspected does not, alone, signify a departure into arbitrary conduct, since reinspection is mandated by statute. *See* 3 P.S. § 459-218(a).

### viii.    Due Process - Liberty Interest

Defendants seek to dismiss Plaintiffs' eighth and final cause of action, which alleges a violation of their liberty interest in earning a living.  (Am. Compl. ¶¶ 147-150.)  Inasmuch as Plaintiffs fail to allege how Defendants' conduct prohibits them from engaging in the occupation of dog breeding, said claim must be dismissed.

The liberty guarantee of the Fourteenth Amendment includes the right to "engage in the common occupations of life . . . as essential to the orderly pursuit of happiness by free men." *Conn v. Gabbert*, 526 U.S. 286, 291 (1999) (internal citations omitted).  This liberty guarantee "includes a generalized due process right to choose one's field of private employment," but is subject to reasonable government regulation.  *Id.* at 291-292; *See also Dent v. W. Va.*, 129 U.S. 114 (1889)(upholding licensing requirement to practice medicine because state has interest in maintaining general welfare of its citizens).  "[I]t is the liberty interest to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment." *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, No. 09-4182, 2010 U.S. App. LEXIS 13485, at *15 (3d Cir. Pa. June 30, 2010)(citing *Piecknick v. Pa*, 36 F.3d 1250, 1259 (3d Cir. 1994)).  "[P]laintiffs must allege an inability to obtain employment within the field, not just a particular job or at a specific location or facility." *Id.*

In the instant matter, Plaintiffs allege that the practice of denying kennel licenses based upon "unsatisfactory" notations made after a kennel inspection, violates their Fourteenth Amendment liberty interest.  (Am. Compl. ¶¶ 148-150; Pls.' Resp. to Defs.' Mot. to Dismiss 36.)  However, Plaintiffs are not prohibited from pursuing their chosen occupation of dog breeding when they receive an unsatisfactory notation after kennel investigation.  Plaintiffs have not

alleged how a notation directly affects the pursuit of the dog breeding profession. Although an unsatisfactory notation may later become a basis for denying or revoking a kennel license, it does not, in and of itself, prohibit the dog breeder from continuing to breed dogs unless or until his or her kennel license is actually denied or revoked. *See* 3 P.S. § 459-211(b). Additionally, and as noted hereinabove, the denial of a kennel license is effective ten days after notice of denial is given to the dog breeder and only if the breeder has not requested a hearing on the matter. *Id.* Receiving an "unsatisfactory" notation does not result in any dog breeding interruption. Instead, an unsatisfactory notation is one of several factors that the Secretary may consider in determining whether to ultimately deny or revoke a kennel license. *See* 3 P.S. § 459-211(a.1).

Plaintiffs allege that Defendants' course of conduct has been carried out with the intent to put Plaintiffs out of business, in violation of their liberty interest. (Am. Compl. ¶ 149.) Defendants move to dismiss Plaintiffs Stoltzfus, Myer and Esh's liberty interest claim because they either remain in business or have chosen to close their business of their own volition and thus lack a cognizable injury to bring forth this claim. (Defs.' Mot. to Dismiss 18-19.) This Court finds that said Plaintiffs have failed to state a claim upon which relief can be granted and that said claim must therefore be dismissed.

First, it is apparent that Plaintiff Stoltzfus removed her dogs in furtherance of her husband's business interests and voluntarily closed her kennel. (Am. Compl. ¶¶ 70, 73.) Defendants Delenick and Warden Siddons are referenced in the Amended Complaint for issuing citations *after* Plaintiff Stoltzfus' decision to remove all of her dogs. (Am. Compl. ¶¶ 72, 73, 74.) Accordingly, Plaintiff Stoltzfus does not have a cognizable injury to bring a liberty interest claim.

Next, Plaintiff Myer alleges that he was inspected and denied a kennel license for a quarter of the 2008 year but was later licensed in April 2008.  (Am. Compl. ¶ 65.)  This interruption was temporary and Plaintiff Myer returned to his chosen profession.  *See Conn,* 526 U.S. at 292 (noting that a brief interruption of one's livelihood as a result of legal process does not "rise to the level of a violation of the Fourteenth Amendment's liberty right to choose and follow one's calling.").  Accordingly, Plaintiff Myer does not sufficiently allege a liberty interest claim.

Lastly, Plaintiff Esh asserts that he received two "unsatisfactory" notations in December of 2007 and April of 2008 because Defendant Donmoyer felt that he was not removing dog waste properly.   (Am. Compl. ¶¶ 40, 41, 43.)  Plaintiff Esh does not allege how these notations stopped him from engaging in his chosen profession.  Accordingly, Plaintiff Esh does not sufficiently allege a liberty interest claim.

In view of the foregoing, Plaintiffs' eighth cause of action must be dismissed.

**IV.     Conclusion**

For the reasons set forth hereinabove, Defendants' Motion to Dismiss Plaintiffs' first

cause of action will be denied[24] and Defendants' Motion to Dismiss Plaintiffs' third, fourth, fifth,

sixth, seventh and eighth causes of action will be granted.

An appropriate Order follows.


BY THE COURT:


/s/  C. Darnell Jones, II     J.

---

[24]  Plaintiffs' cause of action for declaratory judgment is hereby rendered moot, except
with regard to Plaintiffs' First Amendment claim, which is not being objected to by Defendants.